NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| COBRA ENTERPRISES, LLC and SUN VALLEY SERVICES, INC., | : : : | **Civil Action No. 20-4750 (SRC)** |
| Plaintiffs, | : : | |
| v. | : : | **OPINION** |
| ALL PHASE SERVICES, INC., | : : | |
| Defendant. | : : | |

**CHESLER**, District Judge

This matter comes before the Court on a motion for summary judgment filed by Defendant All Phase Services, Inc. ("All Phase"). Plaintiff Sun Valley Services, Inc. ("Sun Valley") opposes the motion. The Court, having considered the papers filed by the parties, proceeds to rule on the motions without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, the Court will grant All Phase's motion.

### I.      Background

This subcontractor dispute arises out of two construction projects, one at the Picatinny Arsenal in New Jersey, and the other at Fort Drum in New York. All Phase was the general contractor on these projects, and Cobra was a subcontractor under All Phase. Cobra, in turn, contracted with Sun Valley to perform work on the project as a sub-subcontractor. Sun Valley never contracted directly with All Phase.

Sun Valley alleges the following: Around the late summer of 2016, Cobra failed to make payments to Sun Valley for these projects. Sun Valley's owner, Matthew Pennisi, raised this issue with Alex Abdalla of Cobra, informing him that Sun Valley would sue if Cobra failed to satisfy

its obligations.  Abdalla told Pennisi that Cobra could not pay Sun Valley, but the two ultimately

came to an arrangement where Cobra assigned to Sun Valley certain claims against All Phase (the

"Cobra claims").  (2d Am. Compl. ¶ 3; Pennisi Depo. 50:18-52:13; Pennisi Cert. ¶ 3, 13).

Sun Valley filed this lawsuit in the Superior Court of New Jersey on March 19, 2020,

bringing the Cobra claims against All Phase.  Cobra is technically joined as a plaintiff in this

matter, but for practical purposes, it is an absent party.  The Second Amended Complaint does not

assert any claims on behalf of Cobra, Cobra has not otherwise participated in the litigation, and it

appears to be insolvent.  (Def. Br. at 7 n.1).  All Phase removed the case to this Court on April 22,

2020.  (ECF No. 1).  This is the second lawsuit concerning Cobra sub-subcontractors on All Phase

projects.  Superior Abatement, Inc., a Cobra sub-subcontractor on the Picatinny Arsenal project,

filed a lawsuit in the Superior Court of New Jersey against Cobra and All Phase (the "Prior

Action").  Sun Valley was not a party in the Prior Action.  It was initiated on August 4, 2017, after

the alleged assignment of the Cobra claims to Sun Valley.  It proceeded to a default judgment

against Cobra.  (ECF No. 66-8).

All Phase filed the instant motion for summary judgment on March 16, 2023.  All Phase

asserts there is insufficient evidence to establish an enforceable assignment of the Cobra claims to

Sun Valley, and that even if there was sufficient evidence, the claims would be barred by the Entire

Controversy Doctrine.[1]

Turning first to the sufficiency of the evidence, Sun Valley relies on two pieces of evidence

to establish the assignment.  First, Pennisi discussed the assignment in his deposition ("Pennisi

---

[1] All Phase also argues in its brief that Sun Valley cannot assert any direct claims against it because
they were never in privity of contract.  (Def. Br. at 14-15).  Sun Valley concedes this point.  (Pl.
Br. at 29).

Deposition"):

> Q: Now, Sun Valley's complaint says it's bringing its claim because it's entitled to collect debts owed to Cobra under an assignment. Is that your understanding?
> A: Alex—I had said to Alex that I was going to sue him. So we made an agreement that in exchange, he would allow me to sue for him to collect the money.
> Q: And so was that a conversation that you had?
> A: Yeah, things were coming to a head. We had a verbal conversation probably, I want to say, the end—you know, summertime, late summer.
> Q: Of 2015 or—
> A: No, 2016.
> Q: 2016?
> A: Yeah.
> Q: Okay.
> A: And we made an agreement and I, you know, proceeded with it.
> Q: Was it one conversation?
> A: We talked maybe twice about it.
> Q: Did you ever put anything in writing?
> A: No, it was pretty much just—you know, we met, we had a verbal understanding, and, I mean, I was, you know, pretty, you know, mad, and that was what we came up with. So that's what we did.
> Q: Can you tell me about what you discussed during those conversations?
> A: I said to Alex, Look it, I'm going to go after you. I'm going to sue you for the money. So he said, Well, look, we made an agreement, and he said, You know, you can sue, you know, in lieu of me and to collect the money.
> Q: So how much money did you tell him he owed you at that time?
> A: It had to be—I mean, look, I mean, I didn't think I was going to get, you know, all of it; so I came up with what I thought was legitimate. Him and I talked about it, and I said to him, Look, this is what I'm going to sue for.
> Q: What is that amount?
> A: Between the two jobs, I mean, I don't even know what we said. Whatever—I guess whatever I—whatever we filed for.
> Q: You filed for—when you say filed, the complaint?
> A: Yeah.

(Pennisi Depo. 50:18-52:13). Second, Sun Valley offers a Certification of Matthew A. Pennisi

("Pennisi Certification"), which states:

> Sun Valley's claims against All Phase arise out of an assignment of Cobra's rights against All Phase to Sun Valley. The assignment itself was simple. We agreed that in exchange for Sun Valley giving up of its right to sue Cobra for what it was owed on those two projects, Cobra assigned the rights it had against All Phase for any sums owed to Cobra on the aforementioned two construction projects. . . .

> At some time in the late summer of 2016, no funds had been paid by Cobra to Sun Valley. By this time, I was really angry at Alex [Abdalla] who had made promises of payment to me that were not kept. So, I met with Alex at a New Jersey diner about the fact that Sun Valley had not been paid. Alex claimed that he could not pay Sun Valley what it was owed, but, that All Phase owed money to Cobra. As such, we reached an agreement in which Cobra assigned or gave its claims against All Phase to Sun Valley on these two projects, and Sun Valley could sue All Phase to collect them. Sun Valley would, in turn, give up its rights against Cobra, for what Cobra owed Sun Valley. Alex and I may have had a second conversation about this, but I am currently not sure.

(Pennisi Cert. ¶ 3, 13). All Phase argues these two statements cannot save Sun Valley from summary judgment because they are hearsay, and because they are too indefinite to establish an enforceable oral contract. (Def. Br. at 7-14).

Second, All Phase argues that even if this evidence is sufficient to establish an assignment of the Cobra claims, they would be barred by the Entire Controversy Doctrine. It acknowledges that the Prior Action occurred after the alleged assignment of the Cobra claims. However, All Phase argues Sun Valley was required to intervene in the Prior Action because it was aware of the Prior Action's existence, because the Prior Action concerned the same subcontract agreement between Cobra and All Phase, and because as an assignee, "Sun Valley [stood] in the shoes of Cobra," which was a party in the prior action. (Def Br. at 15-17).

## II.   Discussion

### A. Legal Standard & Choice of Law

The Court evaluates All Phase's motion for summary judgment under Federal Rule of Civil Procedure 56(a). Rule 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is well-established that a factual dispute is genuine

4

if a reasonable jury could return a verdict for the nonmoving party and material if, under the substantive law, the dispute would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Although the burden of proof rests initially with the party moving for summary judgment, when a motion is made and supported," the nonmoving party must establish the existence of a genuine issue as to a material fact in order to defeat the motion. Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985).

To create a genuine issue of material fact, the nonmoving party must come forward with sufficient evidence to allow a jury to find in its favor at trial. Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001), overruled on other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of the Int'l Union of Operating Eng'rs and Participating Emp'rs, 571 U.S. 177 (2014). When considering a motion for summary judgment, a district court "must view the evidence 'in the light most favorable to the opposing party.'" Tolan v. Cotton, 572 U.S. 650, 657 (2014) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)). It may not make credibility determinations or otherwise weigh the evidence. Anderson, 477 U.S. at 255; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004).

The nonmoving party cannot rest on mere allegations; instead, it must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248. "Although summary judgment evidence may be presented in a form which is inadmissible at trial, the party offering the evidence must demonstrate that it could satisfy the applicable admissibility requirements at trial before the evidence may be used on summary judgment." Giuliani v. Springfield Township, 238 F. Supp. 3d 670, 691 n.9 (E.D. Pa. 2017) (internal quotations omitted). Accordingly, "a self-serving conclusory affidavit or deposition testimony is insufficient to defeat

a motion for summary judgment unless, when juxtaposed with other evidence, it is sufficient for a rational trier of fact to credit Plaintiff's testimony." <u>Cannon v. Commc'n Components, Inc.</u>, No. 20-cv-01626, 2022 WL 4300247, at *4 (D.N.J. Sept. 19, 2022) (citing <u>Johnson v. MetLife Bank, N.A.</u>, 883 F. Supp. 2d 542, 549 (E.D. Pa. 2012)); <u>see also</u> <u>Kirleis v. Dickie, McCamey & Chilcote, P.C.</u>, 560 F.3d 156, 161 (3d Cir. 2009) ("It is true that 'conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment.' Instead, the affiant must set forth specific facts that reveal a genuine issue of material fact." (citation omitted) (quoting <u>Blair v. Scott Specialty Gases</u>, 283 F.3d 595, 608 (3d Cir. 2002))).

In a federal question case, "a District Court entertaining pendent state claims should follow the choice of law rules of the forum state," in this case New Jersey. <u>Weikel v. Tower Semiconductor Ltd.</u>, 183 F.R.D. 377, 400 (D.N.J. 1998) (citing <u>Shields v. Consol. Rail Corp.</u>, 810 F.2d 397, 399 (3d Cir. 1987)). The parties disagree as to whether claims arising out of the Fort Drum project should be governed by the law of New York or the law of New Jersey. However, the Court cannot ascertain any conflict between New York and New Jersey concerning the validity of oral assignments of contract claims, and the parties do not identify any conflicts. Therefore, the Court need not decide whether to apply the law of New York or the law of New Jersey for contract validity purposes. All Phase raises the Entire Controversy Doctrine, a unique New Jersey preclusion doctrine. However, as explained below, the Court does not reach the Entire Controversy Doctrine, and therefore, it does not need to decide whether it precludes claims arising out of the Fort Drum project.

B.  Sufficiency of the Evidence

Sun Valley's evidence is insufficient to defeat summary judgment.  Sun Valley must present at least some competent evidence that establishes that Sun Valley, represented by Pennisi, and Cobra, represented by Abdalla,[2] arrived at a meeting of the minds—that in exchange for Sun Valley releasing Cobra from making certain, specific payments, Cobra would assign to Sun Valley certain, specific claims against All Phase.  Kirleis, 560 F.3d at 161.  To the extent the evidence discusses the alleged oral contract between Sun Valley and Cobra, it is entirely conclusory.  Neither the Pennisi Deposition nor the Pennisi Certification state any details of the conversation between Pennisi and Abdalla that allegedly led to the assignment of the Cobra claims.[3]  They only state the conclusion that they agreed to assign the claims.

The Pennisi Deposition reveals that at some time in late summer 2016, Pennisi threatened that Sun Valley "was going to sue" Cobra for an unknown amount of money; Abdalla said "you can sue, you know, in lieu of me and to collect the money"; and ultimately, over the course of one or two conversations, they "made an agreement that in exchange, he [Abdalla] would allow me [Pennisi] to sue for him to collect the money."  (Pennisi Depo. 50:21-23, 51:20-24).

---

[2] The Court assumes, arguendo, that Abdalla had either actual or apparent authority to bind Cobra in this context.

[3] All Phase argues that evidence of the conversation between Pennisi and Abdalla is hearsay.  However, detailed evidence of the conversation would not have been offered for the truth of the substance of the conversation, but rather to established that the two entered into a verbal contract.  Entering into a verbal contract is a verbal act, and accordingly, evidence of this act is not hearsay.  Fed. R. Evid. 801.  However, Sun Valley's evidence provides no details of the conversation between Pennisi and Abdalla, only the conclusion they entered into a contract.  Sun Valley's evidence does not include any out of court statements, but simply states that one or two conversations occurred which led to the formation of an oral contract.  This is not a statement within the meaning of Rule 801, and therefore, Sun Valley's evidence is not hearsay.  Id.

The Pennisi Certification is no better.  It describes the meeting or meetings with Abdalla: "I met with Alex [Abdalla] at a New Jersey diner about the fact that Sun Valley had not been paid. Alex claimed that he could not pay Sun Valley what it was owed, but, that All Phase owed money to Cobra." (Pennisi Cert. ¶ 13).  It twice states the legal conclusion that the parties came to an agreement:  "We agreed that in exchange for Sun Valley giving up of its right to sue Cobra for what it was owed on those two projects, Cobra assigned the rights it had against All Phase for any sums owed to Cobra on the aforementioned two construction projects," (Pennisi Cert. ¶ 3); "[W]e reached an agreement in which Cobra assigned or gave its claims against All Phase to Sun Valley on these two projects, and Sun Valley could sue All Phase to collect them.  Sun Valley would, in turn, give up its rights against Cobra, for what Cobra owed Sun Valley," (Pennisi Cert. ¶ 13).  And it states that the agreement occurred over the course of one or two meetings:  "Alex and I may have had a second conversation about this, but I am currently not sure." (Pennisi Cert. ¶ 13).

These sources are not adequate evidence to establish the existence of an oral assignment of claims from Cobra to Sun Valley.  They fail to provide any detail of the underlying conversation between Pennisi and Abdalla that could show they arrived at a meeting of the minds to assign the Cobra claims.  The deposition gets as far as discussing Abdalla's proposal that Sun Valley "sue . . . in lieu of me and to collect the money." (Pennisi Depo 51:22-24).  But neither source contains information bridging Abdalla's vague proposal of assigning unspecified claims to an ultimate agreement to assign specific claims in exchange for the release of other specific claims.  There is only the legal conclusion that they agreed to the assignment.  Pennisi, as a fact witness, would not be competent to testify to a legal conclusion.  Fed. R. Evid. 701.  Accordingly, his conclusory

deposition testimony and affidavit are insufficient to defeat summary judgment.  Cannon, 2022 WL 4300247, at *4.

Furthermore, even if the Court could take Pennisi at his word, that an oral assignment did occur, this bare bones assertion of an assignment would not be enforceable because it lacks evidence of definite essential terms.  The evidence does not establish what claims Sun Valley is releasing against Cobra, and which claims Cobra is assigning to Sun Valley.  These are essential terms, and the Court cannot enforce the contract without a specific understanding of what the parties agreed to exchange.  See K. Moodmere Assocs., L.P. v. Menk Corp., 316 N.J. Super. 306, 314 (App. Div. 1998) ("A valid assignment must contain evidence of the intent to transfer one's rights, and 'the subject matter of the assignment must be described sufficiently to make it capable of being readily identified.'" (quoting 3 Williston, Contracts § 404 at 4 (Jaeger 3d ed. 1957)); Express Indus. & Term. Corp. v. N.Y. State Dept. of Transp., 93 N.Y.2d 584, 589 (1999) ("To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms" (citing Martin, Delicatessen, Inc. v. Schumacher, 52 N.Y.2d 105, 109 (1981)).  The Pennisi Certification attempts to provide a clear statement of what was exchanged, but its statements are pure conclusion.  There is no discussion of what was said between Pennisi and Abdalla that led to the conclusion that Cobra assigned its claims to Sun Valley.  The Court cannot enforce a contract when the only evidence of its essential terms are conclusory statements in an affidavit.  Kirleis, 560 F.3d at 161.  Therefore, the assignment is unenforceable because it lacks definite essential terms.

C.  Entire Controversy Doctrine

Because the Court concludes summary judgment must be granted due to insufficient evidence to establish the assignment of the Cobra claims, the Court does not reach the issue of the Entire Controversy Doctrine.

**III.    Conclusion**

For the foregoing reasons, the Court will grant All Phase's motion for summary judgment. An appropriate order will be filed.

__ s/ Stanley R. Chesler __
STANLEY R. CHESLER
United States District Judge

Dated:  June 9, 2023